FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 07 2011

JAMES W. McCORMACK, CLERK

By: _____
DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS, LITTLE ROCK DIVISION

HAROLD G. SMITH, TRUDY SMITH
And WARREN PRINCE, Individually
and for all other persons similarly situated,

CASE NO. 4:11 cv 102 Jmm

Plaintiffs

v.

JPMORGAN CHASE & CO, and
CHASE BANK USA, N.A.

This case assigned to District Judge Moody
and to Magistrate Judge Volpe

Defendants

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Harold G. Smith, Trudy Smith and Warren Prince, individually and acting on behalf of all other persons similarly situated as defined below, bring this action against Defendants, JPMorgan Chase & Co., and Chase Bank USA, N.A. (referred to herein collectively as "CHASE" or "Defendants"), and state and allege as follows:

### I.    INTRODUCTION AND NATURE OF CASE

1.    This is a proposed or putative class action brought on behalf of a class of Arkansas residents who (1) were marketed by Chase, and the credit card companies owned by Chase, to purchase and maintain "Payment Protector" coverage for their credit card account balances, and (2) paid for Chase "Payment Protector" coverage.

2.    This action is primarily based upon claims for violations of Arkansas' Deceptive Trade Practices Act ("ADTPA"), as well as upon additional common-law and equitable causes of action and requests for relief.

1

3.      Chase, and the credit card companies owned by Chase, markets and sells "Payment Protector" as a product that will prevent cardholders from being "caught off guard" by providing benefits to cardholders should they experience an "unexpected life event", such as unemployment or disability.  Chase charges the cardholder $.89 per hundred dollars of monthly account ending balance.  In return, Chase tells the cardholder that they are "enrolled" in the program and Chase will make the minimum payments on the cardholder's account should the cardholder become unemployed or disabled or if the cardholder experiences another event that qualifies him for Payment Protector coverage.  These promises are illusory.

4.      Chase sells Payment Protector through misleading statements, incomplete statements, and misrepresentations.  The product is sold through inserts in billing statements, print ads and direct telemarketing.

5.      Chase manipulates the Payment Protector sales process by misrepresenting to cardholders that they will be protected in their time of need for events such as unemployment or disability, and then denying claims when the cardholder tries to use the benefit.

6.      However, the Payment Protector claims process is difficult and onerous.  The sales process is conducted without regard to eligibility and the amounts charged for the product is so far in excess of the value of the product provided, that only a miniscule amount of Payment Protector premiums are ever paid out as benefits.

7.      Not only are purchasers significantly overcharged for the Payment Protector product, those purchasers who are denied benefits do not receive a refund for premiums paid, even if they never qualified for coverage at the time of sale.   The purchasers have therefore paid Chase for a product that is entirely worthless to them.

8.      Chase engages in a practice known as "post-claims underwriting". This is the practice of selling a product without any inquiry into whether the customer is qualified for benefits in the event of loss, and then determining that the customer is not eligible for the benefits only at the time a claim for benefits is made.

9.      Chase's practice of post-claims underwriting is made more egregious by the fact that it does not refund premiums paid, even when it is clear the purchaser was never eligible for the benefits in the first place.

10.     Chase's practice of post-claims underwriting gives Chase the unfettered incentive and right to arbitrarily and capriciously deny claims.

11.     In addition, Chase imposes so many up-front bureaucratic hurdles through unreasonable and recurrent demands for claim forms, documentation, doctor's opinions and the like that few purchasers are able to get through the maze and establish a claim for benefits. All this is required for a benefit that typically is no more than a $25 to $30 waiver of a minimum monthly payments, for a period of no more than one year.

12.     It is not possible for Plaintiffs and class members to understand the terms, conditions, restrictions, and bureaucratic hurdles in the claims process from the telephonic sales disclosures and the written documents provided by Chase.

13.     Payment Protector is a "mass" marketed product in that the marketing, product management, and claims handling processes are applied in a uniform manner so that all members of the proposed class were marketed in a virtually identical manner and received standardized responses from Chase in response to claims for benefits.

14.     Chase's sales materials tell prospective purchasers that they will be protected for

3

events such as unemployment or disability. These statements are misleading and deceptive.

15.     Plaintiffs reasonably relied upon Chase's standardized sales representations when they purchased Payment Protector. When Plaintiffs requested benefits payments, their claims for benefits was rejected. Plaintiffs' experiences are virtually identical to the experience of the many thousands of purchasers of Payment Protector who applied for benefits only to find out that they did not qualify for benefits and were not given protection in their time of need, but instead were denied coverage despite having paid for the product.

16.     Chase manipulates the claims payment process in order to increase profits by its various strategies that result in the denial of claims.

17.     A common reason employed by Chase for denial of benefits is the employment status of the cardholder at the time of sale, such as part-time employment, self-employment, unemployment, seasonal employment, or employment by a family member. The purchaser's status at the time of sale could easily have been determined by Chase by asking a few simple questions, but Chase intentionally does not ask those questions. This deceptive strategy greatly increased sales, particularly to people not qualified for the product.

18.     As a result of Chase's deceptive marketing schemes and claims practices, Plaintiffs and class members are fraudulently induced to purchase a product that is virtually worthless to them, and are significantly overcharged for the product.

19.     The ratio of premiums charged to claims paid is excessive, which illustrates that the value of the product was deceptively marketed to Plaintiff and class members.

20.     The Payment Protector product does not provide "peace of mind" for the purchaser. In fact, the obverse is true in that it only provides "peace of mind" for Chase. Not

4

only does it provide Chase with a steady stream of exorbitant profits, but it also give Chase ongoing access to information about purchasers.

21.    Thus, Payment Protector benefits Chase, not purchasers, because Chase is given access to information on the life and health status of cardholders, information to which it would normally not have ongoing access.  As a result, Chase can use this information to limit or suspend credit to cardholders in their time of need, thereby protecting itself.

22.    Chase denies the vast majority of benefit claims.  Even if a claim is paid, the payment is in the form of suspension of monthly minimum payments.  With Chase's miniscule claims payment rate, it is apparent that Chase's Payment Protector product is little more than the imposition of an additional fee sold in the guise of a product that will benefit its cardholders.

**II.    PARTIES**

23.    Plaintiffs Harold G. Smith and Trudy Smith, husband and wife, reside in Pulaski County, Arkansas.  Harold G. Smith and Trudy Smith received a Chase credit card and accepted and paid for Payment Protector.  Harold Smith became unemployed and attempted to use the Payment Protector coverage but his claim for benefits was denied.

24.    Plaintiff Warren Prince resides in Faulkner County, Arkansas. Mr. Prince became disabled due to a heart condition and attempted to use the Payment Protector coverage but his claim for benefits was denied.

25.    The members of the proposed class and subclass are residents of the State of Arkansas.

26.    Defendant Chase is a publicly traded financial service company incorporated in Delaware with a principal place of business in New York City, New York.  Service is proper

5

upon its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

27.    Chase conducts business in Arkansas.

28.    Throughout this complaint, "Chase" refers to the Defendants and to all credit card companies or credit card brands owned by Chase.

29.    At all times herein mentioned, Defendant, and each of them, were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other.  In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other co-Defendant.

**III.    JURISDICTION AND VENUE.**

30.    Substantial acts which give rise to the causes of action asserted herein occurred in this State and within this venue.

31.    Venue is proper in this Court because Plaintiffs Harold G. Smith, Trudy Smith and Warren Prince reside in Pulaski County, Arkansas, and proposed class members are citizens of Arkansas.  Pursuant to 28 U.S.C. §1391(c), the defendant corporation Chase Bank is deemed to reside in this District because it is subject to personal jurisdiction in this District and because Chase has continuous and systematic contacts with this State through issuing credit cards, offering credit card products such as Payment Protection, and because Chase sends monthly statements and sells products and services in Arkansas to Arkansas residents.  Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the constitution or laws of the United States and 1332(d)(2) because the matter in

6

controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class members and Defendants are citizens of different states.

### IV.   STATEMENT OF FACTS AND ALLEGATIONS

32.   The Plaintiffs are among the thousands of Arkansas citizens who were targeted by Chase as part of that company's credit card marketing programs, which include Chase's sales of a product it calls "Payment Protector".

33.   In September, 2008, Chase purchased the assets and liabilities of Washington Mutual and is therefore liable for acts committed in the sale and management of Payment Protector by Washington Mutual prior to the purchase.

34.   Chase markets and sells "Payment Protector" as a product that Chase tells cardholders will prevent cardholders from being "caught off guard" by providing benefits to cardholders should they experience an "unexpected life event", such as unemployment or disability.  Chase charges the cardholder $.89 per hundred dollars of monthly account ending balance.  In return, Chase tells the cardholder that they are "enrolled" in the program and Chase will make the minimum payments on the cardholder's account should the cardholder may be unemployed or disabled or experiences another event that qualifies the cardholder for Payment Protector benefits.  These promises are illusory.

35.   Chase sells Payment Protector through misleading statements, incomplete statements, and misrepresentations.  The product is sold through print ads, printed inserts mailed along with credit card statements and direct telemarketing.

36.   Chase manipulates the Payment Protector sales process by misrepresenting to

7

cardholders that they will be protected in their time of need for events such as unemployment or disability, and then denying claims when the cardholder tries to use the benefit.

37.     At the time of sale, Chase does not ask the cardholder any qualifying questions to determine if the cardholder is eligible for Payment Protector benefits or to determine if the cardholder will ever be eligible for Payment Protector benefits.  Defendants do not disclose the terms of Payment Protector until after the consumer accepts or is charged for the product.  The prolix documents that Chase eventually provides to cardholders, including plaintiff, that purports to contain a list of exclusions or grounds for denial of benefits, but those documents do not contain complete information about the claims practices Chase uses when denying benefits, and are worded in such a way that the documents are meaningless and incomprehensible to the average consumer.

38.     There are thousands of Arkansas Chase cardholders who have paid for Payment Protector and are not eligible to receive benefits.  The terms and exclusions for Payment Protector product are not adequately disclosed to consumers before the consumer buys the product, and Payment Protector coverage is so restricted in benefits, and processing claims under the coverage is made so difficult by Chase's use of numerous bureaucratic hurdles, that the product is essentially worthless.

39.     Chase makes no effort at the time of sale to determine if the Payment Protector coverage is available to the consumer before charging for the product.  For example, numerous senior citizens and retired Arkansas residents are charged for Payment Protector although they are excluded from receiving benefits by Chase because they are not employed.

40.     Despite the billions of dollars the Company earns from its operations, Chase

increased its fee income by intentionally developing and marketing the Payment Protector product, a product which fails to provide promised benefits to thousands of Arkansas residents who are charged for the "service".

41.     Payment Protector is a product or service that Chase sold to its Arkansas credit cardholders during the class period for a price of $.89 per $100 of month ending credit card balance.

42.     Credit card companies, including Chase, have a substantial amount of personal information about the cardholder. This information comes from the credit card application and from other consumer research that Chase performs. At a minimum, at the time of sale of the Payment Protector product, Chase has the cardholder's age, address and zip code.

43.     Chase's marketing materials told Arkansas consumers that Payment Protector would provide peace of mind if something unexpected should happen because the minimum monthly payment on the cardholder's account balance will be paid and this will also help safeguard cardholders' good credit rating.

44.     Chase promises Arkansas consumers that Payment Protector will pay the minimum monthly payment if the cardholder or the secondary cardholder is involuntarily unemployed or unable to work due to disability or experiences another covered event.

45.     Before selling the Payment Protector product, Chase does not review its records or ask the cardholder a single question to determine if Payment Protector is appropriate for the customer. Chase could easily ask the customer's age, physical condition, or employment status, but Chase does not ask any of these questions.

46.     The exclusions for payment of benefits for Payment Protector are not disclosed to

9

the customer at the time of sale.  These are the exclusions that the customer is not told of at the time the customer purchases Payment Protector:

    (a)    That the most significant benefits are not available if you retire, or if you are already retired;

    (b)    That the most significant benefits are not available if you are not working;

    (c)    That the most significant benefits are not available if you are self employed;

    (d)    That the most significant benefits are not available if your are employed by a spouse;

    (e)    That the most significant benefits are not available if you are employed part time;

    (f)    That the most significant benefits are not available if you are employed on a seasonal basis;

    (g)    The definition of seasonal employment;

    (h)    The definition of part time employment;

    (i)    That some benefits are not available if you are injured or disabled at the time you purchase Payment Protector;

    (j)    Whether there is coverage if you are employed full time when you purchased Payment Protector, and then changed your job status to part time or seasonal

    (k)    That there will be no refund for premiums when your claim for benefits is denied;

    (l)    That the consumer will continue to be charged for Payment Protector even after being denied for coverage, until the consumer takes action to stop Payment Protector;

    (m)    Whether a co-cardholder has Payment Protector, or the distinction between a primary cardholder and a secondary cardholder as applied to eligibility for Payment Protector product lines.

    (n)    That the terms of the cardholder agreement would be unilaterally modified by Chase upon purchasing Payment Protector;

    (o)    That coverage does not apply if injuries are self-inflicted;

(p)     That temporary disability benefits require monthly certification by a physician;

(q)     That minium payment benefits are limited to 12 months;

(r)     That benefits are not available for the first 60 days of unemployment or disability;

(s)     That Payment Protector is not an insurance product;

(t)     That Payment Protector is not regulated by the Arkansas Insurance Department.

47.     Chase relies upon a deceptive practice known as "post claims underwriting" to deny claims and increase profits.   This is the practice of asking few or no questions of the cardholder at the time of sale to determine if the customer is qualified for the product, then when the customer attempts to use the "benefits" of Payment Protector, Chase denies the benefits for a reason related to age, employment status, physical condition, or one of the many other reasons for denial listed in the preceding paragraph.

48.     Chase does not have a policy of refunding unearned premiums, so customers paid for Payment Protector for years, made an application for a benefit, were turned down for benefit payments because of some reason for disqualification that was not disclosed at the time of sale, and then receive no refund of the premiums paid.

*Payment Protector compared to credit insurance*

49.     The marketing of Payment Protector makes the product sound like a form of credit insurance, but the customer is not told at the time of sale that the product is not credit life, disability insurance or credit insurance.

50.     Payment Protector is basically indistinguishable from credit insurance in that premiums are charged to the customer on a monthly basis, the charges are based upon an account balance on a specified date, and Chase promises it will make some form of payment to the

customer's credit account upon the occurrence of a contingent event. However, unlike credit insurance, Payment Protector is not regulated and the premiums Chase charges consumers is unhinged and unrelated to the amount of claims Chase's pays. Indeed, upon information and belief, Chase's profit margin on its Payment Protector product is outrageously high and excessive as determined when the amount of benefits "paid" are compared to the amount of premiums charged.

51.    Chase's branding of this product as "Payment Protector" is a misleading or deceptive act that constitutes an attempt to obscure or conceal the nature and value of the product when selling it to Arkansas consumers.

52.    Payment Protector was designed by Chase so that it could continue to sell credit insurance products while avoiding the consumer protections provided by the Arkansas Insurance Department, such as the licensing of sales agents, the regulation of rates, the approval of methods of marketing, the regulation of products that can be sold, and the regulation of claims practices.

53.    Arkansas consumers who purchased Payment Protector received documents days or weeks after the sale.

54.    Among the Payment Protector documents are some exclusions buried in fine print. The exclusions are not clearly written or prominently displayed, and it is not possible for the Arkansas consumer to determine all of the exclusions that apply at the time the customer applies for Payment Protector or its benefits.

55.    As a result of the undisclosed exclusions for Payment Protector benefits, the value of the product is deceptively marketed, and all Arkansas cardholders paying for Chase's Payment Protector product are damaged by paying for Payment Protector.

12

56.     The Payment Protector product is worthless to a large number of Arkansas cardholders who paid for the product during the class period, in particular senior citizens and retired persons.

*Unlawful Conduct of Chase in the Sale of Payment Protector.*

57.     Chase markets Payment Protector to consumers, including those who fall into the "subprime" credit category and therefore have low credit limits on their credit cards.

58.     Chase sells the Payment Protector product as a service that will safeguard the consumer's credit and provide peace of mind by making minimum credit card payments upon some contingency that results in the cardholder's inability to make payments.

59.     Chase does not provide essential terms of the product at the time of sale.  Key terms governing Payment Protector are not disclosed.

60.     The product terms and qualifiers that are disclosed after sale are incomplete, misleading, deceptive, and difficult to read and understand for the ordinary Arkansas Chase cardholder.

61.     Chase has a duty to properly disclose the terms and conditions of Payment Protector prior to, and at the time of, sale to the consumer.  Chase's deceptive marketing strategy is to sell the product without questioning the consumer regarding whether the customer is eligible for the benefits of the product.  This deceptive strategy results in many more sales than if qualifying questions were asked at the time of sale.  The ordinary consumer is not able to decipher or understand all of the exclusions or definitions applied by Chase to Payment Protector in denying claims for benefits, even from the most careful reading of the materials mailed to the customer after the sale.  Despite not inquiring at the time of sale, when a request for benefits is

made, Chase then asks qualifying questions and demands substantial documentation, thus eliminating a large number of consumers from receiving benefits.

62.     Chase fails to provide adequate information regarding Payment Protector coverage and restrictions prior to selling the product, and then provides information about the product that is deceptive, misleading, obfuscatory and incomplete.

63.     As an example of misleading and obfuscatory language, Payment Protector appears to be a financial product or service that is ordinarily sold as credit life or disability insurance, yet the product materials carefully avoid any use of the word "insurance".   The product materials do, however, refer to making "claims", which is either truthful (if this is insurance) or deceptive and misleading (if this product is something other than insurance).

64.     Although represented to the consumer as something in the nature of an insurance product, the Payment Protector product is virtually worthless to many Arkansas Chase cardholders because of the numerous restrictions and exclusions that are imposed after the consumer buys the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the Arkansas consumer who attempts to secure payments from Chase under this coverage.

65.     This product is sold to Arkansas consumers without any consideration for the circumstances of the consumer or any reasonable investigation into the consumer's circumstances that may cause the product to be worthless to the consumer.  For instance, many Arkansas senior citizens and retired persons are charged for this product although they are categorically excluded from Payment Protector benefits should they become ill or incapacitated and unable to make credit card payments.

14

66.     The Payment Protector product serves Chase's interest in generating substantial fee income, and has the added benefit to Chase of lowering available credit to its subprime cardholders through the imposition of this additional fee.

*Senior Citizens*

67.     Chase violated Ark. Code Ann. §4-88-201 *et seq.* in marketing this product to Arkansas senior citizens and is therefore liable for additional civil penalties for acts committed against senior citizens. See A.C.A. §4-88-201 *et seq.*

## V.     FACTS AS TO PROPOSED CLASS REPRESENTATIVES

a.     *Facts as to Plaintiff Harold G. Smith*

68.     Plaintiff Harold G. Smith was a senior citizen at all times that he received and paid for Payment Protector from Chase.

69.     Plaintiff was the recipient of Chase marketing for Payment Protection during the class period, purchased Payment Protection, and paid the charges for Payment Protector.

70.     Although he paid for the Payment Protector product, Mr. Smith was never eligible for the advertised benefits of Payment Protector coverage due to the product's restrictions and exclusions because he was self-employed.

71.     Plaintiff Harold G. Smith is employed as a brick mason. He was diagnosed with prostate cancer and tried to use the Payment Protector feature but was turned down by Chase. The Payment Protector agent who took his call declined his telephone application for benefits, telling Mr. Smith that working as a "brick mason" disqualified him from receiving Payment Protector benefits, even though he was sold the product by Chase and paid for the product. There is no information provided to the consumer at the point of sale or thereafter in which a brick

mason is defined as ineligible for Payment Protector benefits.

72.     No information was provided by Chase that provided Harold Smith with sufficient knowledge about the product limitations and exclusions of Payment Protector that he could make an informed decision about the value of the product.

73.     Payment Protector coverage exclusions and restrictions are revealed to the consumer only after the coverage has already been sold to the Chase cardholder, and even then the disclosures are incomplete and are written in fine print in language that is hard for the ordinary customer to understand.

74.     Chase makes no efforts to determine if the cardholder is eligible for Payment Protector benefits prior to charging for this service.

b.      *Facts as to Plaintiff Warren Prince*

75.     Plaintiff Warren Prince was self-employed and owned his own business when he obtained a Washington Mutual (WaMu) card, and purchased and paid for Payment Protector. Washington Mutual is now owned by Defendants and is referred to here as WaMu/Chase

76.     Plaintiff received a mail solicitation to sign up for Payment Protector with one of his monthly statements, along with marketing materials for the Payment Protector product. Plaintiff signed the enclosed enrollment form and mailed it back.

77.     Although he paid for the Payment Protector product, Mr. Prince was never eligible for the advertised benefits of Payment Protector due to the product's restrictions and exclusions, specifically because he was self-employed.

78.     Plaintiff Warren Prince owned his own business and was employed as a diesel mechanic.  On March 23, 2007, he suffered a heart attack.  On March 2, 2008, after extensive

16

communication with WaMu/Chase about securing his Payment Protector benefits, Mr. Prince obtained a signed order from his doctor designating him as disabled indefinitely. Ultimately, a WaMu/Chase representative denied Mr. Prince Payment Protector benefits, flatly stating that he did not have coverage.

79.     On information and belief, Plaintiff asserts that WaMu/Chase denied Mr. Prince Payment Protector benefits because he was self-employed, owning his own business.

80.     Payment Protector coverage exclusions and restrictions were revealed to the consumer only after the coverage has already been sold to the WaMu/Chase cardholder, and even then the disclosures were incomplete and were written in fine print in language that is hard for the ordinary customer to understand.

81.     WaMuChase made no efforts to determine if the cardholder was eligible for Payment Protector prior to selling the product to the cardholder.

VI.     CLASS ACTION ALLEGATIONS

*Class Action Allegations.*

82.     Plaintiffs bring this action on their own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to the provisions of Rule 23 of the Arkansas Rules of Civil Procedure.

83.     Plaintiffs seek certification of a class Arkansas customers of Chase, defined as follows:

(a)     All residents of the State of Arkansas who (1) who were marketed or solicited by Chase or its predecessor corporation by mail and/or telephone to purchase Payment Protector; and (2) who paid for "Payment Protector";

(b)     A subset of all residents of the State of Arkansas who were senior citizens at the time that they were solicited for, and made payments to Chase for Payment

17

Protector.

84.     Excluded from the proposed Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

85.     The Class is composed of hundreds or thousands of Arkansas Chase cardholders, the joinder of which in one action would be impracticable. The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court. The identities of individual members of the Class are readily ascertainable through the defendants' billing records.

86.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class. The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

   a)     Whether the defendants' sales, billing and marketing scheme as alleged herein is fraudulent, deceptive, unlawful and/or unfair in violation of Arkansas' Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*;

   b)     Whether Chase's practice of denying benefits under Payment Protector coverage is a fraudulent, deceptive, unlawful and/or unfair in violation of Arkansas' Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*;

   c)     Whether the plaintiffs and the Class members are entitled to restitution of all amounts acquired by defendants through their common and uniform scheme;

   d)     Whether plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by Chase;

   e)     Whether plaintiffs and the Class members are entitled to prospective injunctive relief enjoining Chase from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged

herein; and

f)      Whether plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of the defendants' wrongful scheme.

87.     Plaintiffs assert claims that are typical of the Class.  They were targeted by Chase for sale of Payment Protector, they were subjected to Chase's standardized mass marketing practices, and he purchased and paid for Payment Protector, and they were subjected to Chase's fraudulent claims practices.  Plaintiffs and the Class members have similarly suffered harm arising from Chase's violations of the law as alleged in this amended complaint.

88.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent.  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' interests are not antagonistic to those of the Class members.  Plaintiffs have retained counsel competent and experienced in the prosecution of class litigation.

89.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and the Class members' claims.  Plaintiffs and members of the Class have suffered irreparable harm as a result of defendants' fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent the class action, the Class members will continue to suffer losses, the violations of the law described herein will continue without remedy, and defendants will be permitted to retain the proceeds of their deceptive and misleading business practices.  Defendants continue to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint.

VII.   CAUSES OF ACTION

a.   COUNT ONE - VIOLATION OF A.C.A. § 4-88-101 *et. seq.*, Arkansas Deceptive Trade Practices Act.

90.   Plaintiffs restate and reallege the preceding paragraphs of the Complaint as though set out here word for word.

91.   Defendants' actions in connection with their Payment Protector plan, as described throughout this Complaint, constitute unfair and deceptive acts and practices in or affecting commerce, for purposes of Arkansas' Deceptive Trade Practices Act.

92.   Each Plaintiff is an "individual, organization, group, association, partnership, corporation, or any combination of them," for purposes of Ark. Code Ann. § 4-88-102(4), who has purchased Payment Protector coverage.

93.   Each Defendant is an "individual, organization, group, association, partnership, corporation, or any combination of them" for purposes of Ark. Code Ann.§ 4-88-102(4).

94.   Plaintiffs have been injured as a result of Defendants' activities which violate the Arkansas Deceptive Trade Practices Act.  Specifically, Plaintiffs have become responsible for the payments attributable to Payment Protector coverage, even though that service is virtually worthless to Plaintiffs.

95.   Defendants' conduct constitutes false, misleading and/or deceptive practices within the meaning of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, specifically, § 4-88-107.

96.   Defendants' actions violate the Arkansas Deceptive Trade Practices Act § 4-88-108 and other similar state statutes by omitting, suppressing and concealing material information

20

regarding the true terms of the Payment Protector product they sell and deliver to consumers.

97.     Defendants' conduct is subject to civil penalties pursuant to Ark. Code Ann. § 4-88-113, attorney fees pursuant to Ark Code Ann. §4-88-113, and is subject to civil penalties pursuant to Ark. Code Ann. §4-88-202.  In addition Defendant's conduct is subject to an award of attorney fees and costs.

98.     Plaintiffs and class members seek court-ordered relief of an equitable nature against Defendants, including, but not limited to, orders declaring Defendants' practices as alleged to be unlawful, unfair, unconscionable and/or deceptive, and enjoining Defendants from undertaking any further unlawful, unfair, unconscionable and/or deceptive acts or omissions.

99.     Plaintiffs and class members seek disgorgement and restitution of charges paid for Payment Protector, plus interest on damages at the legal rate, as well as three times the amount of their economic damages based on Defendants' knowing and intentional violations of this statute. Plaintiffs seek restitution for acts committed against a senior citizen, defined by Arkansas Statutes as a person over the age of 60 years.  Ark. Code Ann. § 4-88-201(a).

100.    Because Plaintiffs and class members seek to enforce an important right affecting the public interest, Plaintiffs request an award of attorneys' fees and costs on behalf of themselves and the class.

101.    As a result of Defendants' violations of the Arkansas Deceptive Trade Practices Act prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the Class have suffered monetary damages for which Defendants are liable.

b.      COUNT TWO - INJUNCTIVE RELIEF

102.    Plaintiffs ask the Court to enjoin Defendants to prevent the continuation of the

21

deceptive business practices committed in the State of Arkansas.

      c.     COUNT THREE - RESTITUTION

      103.    Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all

members of the class who made payments to Chase for Payment Protector.  The Plaintiffs ask the

Court to grant the following relief:

      a)     a refund of all Payment Protector payments made to Chase;

      b)     a refund to any consumer who was retired at the time they were sold Payment
             Protector by Chase;

      c)     a refund to any consumer who was a senior citizen at the time they were sold
             Payment Protector by Chase;

      d)     a full refund to any consumer who was otherwise not eligible for Payment
             Protector due to the restrictions in the coverage at the time the product was sold to
             the consumer and who paid for the product.

      104.    Plaintiffs seek injunctive relief  enjoining Chase from continuing to engage in the

fraudulent, deceitful, unlawful and unfair common scheme as alleged herein.

      d.     COUNT FOUR - UNJUST ENRICHMENT

      105.    Plaintiffs restate and reallege the preceding paragraphs of the Complaint as though

set out here word for word.

      106.    In seeking to sell credit cards to Plaintiffs and members of putative Class,

Defendants withheld material terms from consumers prior to activation of Payment Protector,

including the limitations, restrictions and exclusions associated with the product.

      107.    Defendants were unjustly enriched by the practice of withholding material terms

of Payment Protector.

      108.    Defendants were unjustly enriched by its business practices of making it so

difficult for consumers to actually receive payment for Payment Protector that the product was virtually worthless. Such acts were, and are, unconscionable.

109.     Defendants were unjustly enriched by charging the Plaintiffs and Class members for illusory benefits.

110.     Defendants were unjustly enriched by charging Plaintiffs and Class members multiple Payment Protector charges if the cardholder had multiple Chase credit cards.

111.     Defendants were unjustly enriched by charging Plaintiffs and Class members who were retired or who were senior citizens for Payment Protector even though they were ineligible to receive payments by the terms of the Payment Protector documents

112.     As a result of Defendants' actions which constitute unjust enrichment, Plaintiffs and class members suffered actual damages for which Defendants are liable. Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

   e.     COUNT FIVE - CONVERSION.

113.     The acts of Defendant constitute the tort of conversion under Arkansas law through Chase's unlawful imposition of control over the personal property of Plaintiffs and  class members.

114.     Plaintiff and class members ask the Court for damages for the tortious acts of conversion committed by Defendants.

   VIII.     PRAYER FOR RELIEF

   WHEREFORE, Plaintiffs pray:

115.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class

23

representatives, and that the best practicable notice of this action be given to members of the Class represented by Plaintiffs;

116.    That judgment be entered against Defendants and in favor of Plaintiffs and the Class on Counts One and Two as alleged in this Complaint, for injunctive relief as requested herein, and for actual, compensatory and punitive damages in an amount to be determined at trial;

117.    That judgment be entered imposing interest on damages, litigation costs and attorneys' fees against the Defendants; and

118.    For all other and further relief as thus Court may deem necessary and appropriate.

IX.    JURY DEMAND

119.    Plaintiffs demand a trial by jury consisting of twelve persons on all issues so triable.

X.    CONCLUSION.

120.    Plaintiffs ask the Court to certify this case as a class action, for an award of compensatory damages as requested herein, for restitution, for equitable relief and for all other relief to which Plaintiff and class members are entitled.

WHEREFORE, Plaintiffs ask the Court to award compensatory damages as requested herein, for restititution, for equitable relief and for all other relief to which Plaintiff and class members are entitled.

Dated this 7th day of February, 2011.

OWINGS LAW FIRM

24

Steven A. Owings (AR BAR#89-035)
OWINGS LAW FIRM
1400 Brookwood Dr.
Little Rock, AR 72202
Tel: (501) 661-9999
Fax: (51) 661-8393
Email:  sowings@owingslawfirm.com


T. Brent Walker
CARTER WALKER, PLLC
2171 West Main, Suite 200
P.O. Box 628
Cabot, AR 72023
Tel: 501-605-1346
Fax: 501-605-1348


Marc L. Godino (#182689)
Lionel Z. Glancy (#134180)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

Brett Cebulash
Kevin Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: 212.931.0704
Email:  bcebulash@tcllaw.com
            klandau@tcllaw.com


Brian Murray
MURRAY, FRANK & SAILER, LLP
275 Madison Ave., Suite 801
New York, New York 10016
Telephone: 212-682-1818
Email: bmurray@murrayfrank.com


25

*Counsel for Plaintiffs*